IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**WILLIAM B. BENTON, et al.**                                                                **PLAINTIFFS**

**v.**                                     **NO. 3:06-CV-00105 GTE**

**MERRILL LYNCH & CO., INC.;**
**REFCO, LLC**                                                                               **DEFENDANTS**

## ORDER GRANTING SECOND MOTION TO DISMISS

Before the Court is Defendant Merrill Lynch & Co., Inc.'s Second Motion to Dismiss, to which Plaintiffs have responded. The Court previously denied Defendant's first motion to dismiss solely with respect to Plaintiff' fraud claim, after which the Plaintiffs filed an Amended Complaint setting forth in greater detail their theories of fraud against Merrill Lynch. The Court must now determine whether Arkansas law would permit liability to be imposed upon Merrill Lynch for fraud under the facts alleged. For the reasons stated below, the Court concludes that Merrill Lynch's motion must be granted and the case dismissed.

### BACKGROUND

The Court recited the factual background in its recent Order addressing Defendant's first dismissal effort and will not repeat said facts here. (See Court's Order of March 7, 2007). On March 26, 2007, Plaintiffs filed an Amended Complaint, alleging in greater detail the facts supporting its fraud claim against Merrill Lynch. Basically, Plaintiff contends that Merrill Lynch aided and abetted Howell's fraud to the degree that it should be held liable for at least some portion of the damages caused thereby.

For purposes of the present motion, the Court is required to assume the facts alleged by

- 1 -

Plaintiffs are true. Accordingly, that Court accepts as true the following allegations: Merrill Lynch knew or should have known that David Howell "did not meet the separate and specific written requirements to establish and to trade an institutional account" as set out in Merrill Lynch's own operations manuals and policies. (Amended Complaint at ¶ 8). Merrill Lynch knew or should have known that David Howell was using funds obtained from others in order to make large trades of futures contracts in a margin account. (Amended Complaint at ¶ 9). Merrill Lynch knew or reasonably should have known that David Howell "did not have sufficient assets to meet margin calls on the large volume of futures contracts" executed from his institutional account, but Merrill Lynch "continued to permit Howell to trade as an institutional investor, contrary to its own rules, polices and procedures." (Amended Complaint at ¶ 10). Merrill Lynch knew or reasonably should have known that David Howell "was not placing trades on behalf of a bank, thrift institution, or other investment organization, but instead was trading on his own account using money obtained from plaintiffs." (Amended Complaint at ¶ 11). Merrill Lynch "should have made inquiry of Howell concerning the source of his funds in view of the huge losses he was accumulating in his accounts and in view of such losses substantially exceeding the amount of 'investment capital' he had indicated to defendants he had available." (Amended Complaint at ¶ 12). Merrill Lynch's actions facilitated David Howell's ability to continue to conduct a fraudulent investment scheme against the plaintiffs. (Amended Complaint at ¶ 12). Merrill Lynch benefitted financially from David Howell's scheme to defraud the Plaintiffs by the thousand of dollars in commissions generated by Howell's trades. Despite knowledge that David Howell's "trading volume exceeded Merrill Lynch's internal policies concerning 'net worth' and disposable risk capital," Merrill Lynch "allowed Howell to continue to invest and lose funds, all the while earning additional compensation." (Amended Complaint at ¶ 17). "By sitting idly by

- 2 -

and allowing Howell to continue to conduct massive trading in highly speculative trading activities" Merrill Lynch is "guilty of acts and omissions which clearly facilitated the ongoing fraudulent activities of Howell," as a result of which Merrill Lynch was enriched at the expense of Plaintiffs. (Amended Complaint at ¶ 19). Merrill Lynch "gave aid to Howell in his efforts to fraudulently obtain funds" from the Plaintiffs and should be held responsible for having aided and abetted David Howell in his fraud. But for Merrill Lynch's "acts and omissions Howell's fraudulent scheme would have, at the very least, ended at an earlier date thereby either eliminating or reducing the losses suffered by [P]laintiffs." (Amended Complaint at ¶ 20).

## DISCUSSION

Plaintiffs' theory for relief raises novel issue of Arkansas law. The Court finds no meaningful discussion or guidance on such issues in Arkansas case law. Accordingly, the Court looks elsewhere to predict whether, under the circumstances alleged by Plaintiffs, Arkansas' highest court would impose civil fraud liability upon a defendant for participating in or aiding and abetting the fraud of another.

The Court previously expressed the view that the lack of any contention or assertion that Merrill Lynch was aware of Howell's false statements and representations to the Plaintiffs might be fatal to Plaintiff's theory of fraud against Merrill Lynch. It now appears that Plaintiffs are not alleging that Merrill Lynch had actual or constructive notice of Howell's false representations to Plaintiffs. Howell falsely represented to Plaintiffs that he had discovered an investment system that yielded returns of 90%. He then used this falsehood, along with misrepresentations concerning his own net worth and amount of personal funds invested, to entice Plaintiffs to loan him money. In exchange, Howell promised Plaintiffs a much higher rate of return than they could obtain elsewhere.

Accepting that Merrill Lynch should have known that Howell was trading using money provided by others, that Howell was losing large sums of money, and that Howell did not technically qualify for institutional investor status, such knowledge is insufficient to permit Merrill Lynch to be held liable for Howell's fraud on an aiding and abetting theory.

In a broad, general sense, Merrill Lynch may be said to have aided and abetted David Howell by the fact that it allowed him to continue to trade as an institutional investor and to continue trading after he had lost substantial sums of money. Certainly, without access to the futures market, David Howell could not have carried out his scheme. But, in a legal sense, Merrill Lynch faces no liability for aiding and abetting David Howell unless it had knowledge of Howell's scheme to defraud the Plaintiffs.

In other words, Merrill Lynch must have aided and abetted the fraud itself. The tort of aiding and abetting fraud – assuming that Arkansas would recognize such a theory – must include an element of scienter. As the Restatement explains, one is an aider and abettor only if he *"knows* that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." *Restatement (Second) of Torts* § 876(b)(emphasis added); *see In re: Temporomandibular Joint (TMJ) Implants Products Liab. Litig.,* 113 F.3d 1484, 1495, 1496 (8th Cir.1997) ("the aider and abettor must knowingly and substantially assist the wrongful act"; "plaintiff must establish that [an] alleged aider and abettor acted with [the] intention of advancing the tortious activity") (citation omitted).

The tortious activity is not Howell's use of other people's money to trade futures contracts on margin. The tortious activity is not Howell's loss of substantial sums of money. The tortious activity is the false representations Howell used to gain access to Plaintiff's money. The allegations of wrongdoing against Merrill Lynch are insufficient, even if true, to permit a

finding that Merrill Lynch knew of Howell's false representations to Plaintiffs or aided him in any way in enticing Plaintiffs to loan him the money which he used to trade futures contracts.

In *Maruho Co., Ltd. v. Miles*, 13 F.3d 6 (1st Cir. 1993), the Court considered the efforts of Maruho, a sublicensee, to hold the licensor, Miles, liable for fraud perpetrated by Pars Pharmaceutical, the licensee. Miles invented and patented Xorphanol, a pain killing drug. Miles gave Pars the exclusive right to make, use and sell the drug. Pars sublicensed Maruho to develop and sell the drug in Japan. Maruho alleged that Pars misled it during the sublicense negotiations by withholding important negative studies, studies which if revealed would have caused Maruho not to purchase the sublicense. After Pars filed for bankruptcy protection, Maruho attempted to recover its money back from Miles. *Maruho*, 13 F.3d at 7-9.

After finding that there was no evidence that Miles had actual knowledge of the fraud, the court considered whether Maruho could prevail on the theory that Miles should have known about Pars fraud. *Maruho*, 13 F.3d at 8-10. The court concluded that absent actual knowledge that Pars was hiding negative tests, Miles could "neither have known of Pars unlawful (i.e., fraudulent) objective nor have agreed to help achieve it." *Id.* at 10. And, the *Maruho* court noted that "Massachusetts courts have made clear that a defendant 'aids and abets' a tortfeasor only if, at the least, the defendant actually knows about 'its substantial, supporting role in an unlawful enterprise.'" *Id.* at 10 (omitting citation).

Similarly, here, the Court holds that Merrill Lynch may not be liable for any portion of Howell's fraud in the absence of any allegations that Merrill Lynch knew about Howell's fraudulent representations to Plaintiffs or his scheme to defraud them.

## **CONCLUSION**

For the reasons herein stated,

IT IS HEREBY ORDERED that Defendant Merrill Lynch's Motion to Dismiss (docket entry # 34) be, and it is hereby, GRANTED. The Court previously dismissed other claims asserted by Plaintiffs against Merrill Lynch. (See Order of March 7, 2007, Docket No. 28). Based on both Orders, Plaintiffs' Amended Complaint against Merrill Lynch is hereby DISMISSED.

IT IS SO ORDERED this  26th  day of April, 2007.

                                              /s/Garnett Thomas Eisele
                                              UNITED STATES DISTRICT JUDGE